**UNITED STATES of America,**

v.

**John MacDONALD, Defendant.**

**No. CR. 97–10022–NG.**

United States District Court, D. Massachusetts.

June 30, 1998.

---

Michael D. Ricciuti, U.S. Attorney's Office, Boston, MA, for U.S.

## ORDER RE: CONTEMPT

GERTNER, District Judge.

On April 28, 1998, I issued an Order To Show Cause why attorney Shaun Ellis ("Ellis") should not be held in contempt for failure to appear for a conference in the above-captioned matter, set for that date. Ellis' position was that although he represented John MacDonald in connection with a plea agreement and signed the agreement as "attorney for" defendant, he had no obligation to appear before this Court (to implement the plea) because he had not filed a formal appearance. To add insult to injury, he did not file an appearance, he claimed, because he was not competent in federal criminal proceedings and in particular, the sentencing guidelines that are at the heart of today's federal plea negotiations.

Ellis' position is chilling, to say the least. Criminal law is not something to dabble in—a plea negotiation here, serving your client up to cooperate there. Defendants faced with loss of liberty are not to be trifled with—getting their signature on a plea letter, sending them down the garden path to waiving myriad constitutional rights—and then walking away.

The specific issue in the case is whether or not Ellis' negotiation of a Plea Agreement on behalf of his clients, and his signature on the Plea Agreement, comprises an "appearance" that would then oblige him to attend all court proceedings and represent the clients. A subsidiary, but no less important issue, is whether or not, quite apart from the formalities of appearance, Ellis' conduct over the past several months is below the standard for any competent attorney, much less a competent criminal attorney.

## I. FACTS

On December 16, 1996, the defendant John G. MacDonald and attorney for MacDonald, Shaun Ellis, signed an "Acknowledgment of Plea Agreement," accepting a plea agreement set out in a December 13, 1996 letter from the government to Ellis. MacDonald's acknowledgement expressly stated that he had been represented by an attorney: "I have read this letter of agreement in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's office for the District of Massachusetts. I further state that there have been no additional promises or representations made to me by any officials of the United States in connection with this matter." Ellis signed the acknowledgement as "witness" and "attorney for John MacDonald," certifying that MacDonald had both read and understood the agreement.

Pursuant to the Plea Agreement, John G. MacDonald and his son, Christopher MacDonald, cooperated with the Government, and presented evidence against certain defendants in *United States v. George Jung*, 95–10391. When the cooperation was completed, the Government began to finalize the bargain, notably, to bring an information to secure the defendants' plea and to prepare a motion for a U.S.S.G. § 5K1.1 departure.

Ellis, by his absence and his failure to answer phone calls or communicate with his client, substantially delayed the court proceedings and the final resolution of these issues for the client. The information was filed in January of 1998; it was not until June of 1998 that he finally appeared before this Court.

On April 28, 1998, Ellis did not bother to appear for a court-ordered conference. Nobody was sent in his stead; no communication was made to the Court. The conference was reset to May 18, 1998, and the Order To

Show Cause why he should not be held in contempt was issued.

On May 8, 1998, Ellis filed a motion to "withdraw." He indicated that it was "never [his] intention to represent the defendants in court proceedings" before this Court, that he "does not purport to be familiar with any degree of competence with criminal procedure or sentencing in federal district court." He asked to be excused from all further proceedings.

On May 12, 1998, I denied that motion, with the following endorsement: "Counsel is to appear on May 18, 1998. If there is a question as to Mr. Ellis' competence to represent this defendant in a criminal proceeding, then there is also a question about his competence to negotiate a plea agreement for this defendant. Counsel is ordered to appear on May 18 along with his client."

On May 18, 1998, Ellis did not show up. Attorney James Stathopoulos appeared on his behalf and represented that there had been a family emergency. Stathopoulos continued to take the position that Ellis had no obligation to appear on behalf of his client because he had not entered a "formal appearance." Accordingly, Stathopoulos was present to represent Ellis on the Order To Show Cause, not to represent the defendant.

The show cause hearing was rescheduled for June 19, 1998. On that date, Ellis appeared twenty minutes late. He reiterated, through counsel, that there was no basis to cite him for contempt since he had never entered a "formal appearance" in the case. However, perhaps realizing that there were issues here far beyond his formal appearance, he indicated that it was always his intention to preside over the transition from his representation (in connection with the Plea Agreement) to another counsel who would represent the defendant at formal court proceedings.

The Court's investigation suggests otherwise: Ellis had not been in touch with the clients at all, from the date the information was filed until the date that he finally appeared in court on June 19, 1998. Because Ellis was "among the missing," the clients were effectively without representation.

They have now filled out financial affidavits in order to secure court-appointed counsel.

Nothing in Ellis' behavior subsequent to the Plea Agreement suggests in the slightest that he intended to assist the clients in their transition from his representation to that of a "more competent" criminal defense attorney. Indeed, everything in his behavior before this Court strongly suggests that Ellis simply intended to walk away, leaving them in the lurch.

Perhaps the most shocking development of all in this case is that somehow Ellis believes that one can be competent to negotiate a plea agreement on behalf of a client, put the client in a dangerous situation by cooperating with the Government and waiving all rights, and nevertheless, not be competent to enter a formal appearance.

 That is a distinction without a difference. A lawyer cannot "dabble" in criminal law and criminal sentencing. A lawyer cannot represent a client up to a point and then walk away before that representation is completed, without communicating to the client or the court.

Having said that, it is nevertheless also clear to me that the absence of a formal appearance in this case is significant. I am unwilling to create a law of "constructive appearance." At the same time, while Ellis may have no formal obligations to this Court, since he did not enter an appearance, he surely has formal obligations to his clients.

Accordingly, the Order To Show Cause is dismissed, but the matter will be immediately referred to the Board of Bar Overseers.

**SO ORDERED.**